**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

UNITED STATES OF AMERICA,    )
        )    Criminal No. 2:20-120-1
      v.        )
        )
        )
QUREEM OVERTON        )

## OPINION

Robert J. Colville, United States District Judge

      Before the Court are nine pretrial motions filed by Defendant Qureem Overton in this matter.  The pending motions are: (1) a Stark' s Motion to Preclude the Introduction of Recorded Conversations (ECF No. 530); (2) a Motion to Suppress Confidential Informant's Identification of Defendant on or about July 17, 2019 and All Confidential Informant Identification Testimony (ECF No. 533); (3) a Motion to Produce Information Pertaining to Confidential Informants (ECF No. 536); (4) a Motion in Limine to Preclude Law Enforcement Witnesses from Identifying Defendant by Voice at Trial (ECF No. 538); (5) a Motion to Disclose the Identities of Confidential Informants (ECF No. 539); (6) a Motion to Suppress Physical Evidence Seized from 306 Virginia Ave (ECF No. 540); (7) a Motion to Suppress Physical Evidence Seized from 236 Taylor Street (ECF No. 541); (8) a Motion to Suppress Physical Evidence Seized from 117 N. Main Street; and (9) a Supplemental Motion to Suppress Identifications of Defendant by All Confidential Informants, Confidential Sources, and Law Enforcement Officers (ECF No. 806).[1]  The

---

[1] For ease of reference, the Court will primarily refer to the Motions by their ECF number.  The Court will group Motions for consideration where appropriate.

Government has filed an Omnibus Response (ECF No. 840), and the Defendant has filed a Reply (ECF No. 870).   The Court held oral argument on the Motions on February 14, 2024.[2] Accordingly, the Court finds that the pending Motions have been fully briefed and are ripe for disposition.

## I.    Background

Defendant is charged in a thirty-one-count Superseding Indictment (ECF No. 205) with violating federal drug and firearms laws.  As the sole remaining, non-severed defendant, Defendant is charged in 23 of the 31 counts of the Superseding Indictment, and specifically Counts 1 and 2, 4 and 5, 7 through 21, 27, and 29 through 31.  By way of Orders dated January 19, 2023, February 8, 2023, and February 14, 2024, the Court has already addressed motions that were filed at ECF Nos. 134, 531, 532, 534, 535, 672, 673, 674, 767, 768, 769, 805, and 807.

## II.    Discussion

### A. ECF No. 536 Motion to Produce Information Pertaining to Confidential Informants / ECF No. 539 Motion to Disclose Identities of Confidential Informants

With respect to discovery in criminal cases, the United States Court of Appeals for the Third Circuit has explained:

> In contrast to the wide-ranging discovery permitted in civil cases, Rule 16 of the Federal Rules of Criminal Procedure delineates the categories of information to

---

[2] While scheduled as a "Motion Hearing," the Court clarified that:

> [W]hile [the Court] has scheduled a "Motion Hearing" for February 14, 2024, that scheduling Order should not be construed as an order granting Defendant's request for a *Franks* hearing on any of his motions.  Rather, the Court will hear oral argument and any evidence the parties care to introduce during that hearing, and will take Defendant's request for *Franks* hearings under advisement at the conclusion of that hearing.  This case has only recently resumed after a lengthy delay at Defendant's request, and the 2/14/2024 Motion Hearing is intended to provide all parties with an opportunity present whatever argument and evidence they believe is appropriate for the Court's consideration of all requests set forth in Defendant's Motions, including his requests for *Franks* hearings on several of his Motions.

ECF No. 942.  Neither party ultimately introduced evidence during the oral argument/hearing, and the Court has thus characterized that proceeding simply as "oral argument."

which defendants are entitled in pretrial discovery in criminal cases, with some additional material being discoverable in accordance with statutory pronouncements and the due process clause of the Constitution. The Jencks Act requires that after each government witness has testified on direct examination, the government must produce to the defense "any statement" made by the witness which relates to his or her testimony. In *Brady*, the Supreme Court held that due process required that the government produce all "exculpatory" evidence, which includes both "[m]aterials ... that go to the heart of the defendant's guilt or innocence and materials that might affect the jury's judgment of the credibility of a crucial prosecution witness."

*United States v. Ramos*, 27 F.3d 65, 68 (3d Cir. 1994) (quoting *United States v. Hill*, 976 F.2d 132, 134–35 (3d Cir.1992)); *see also United States v. Searcy*, No. 19-CR-135, 2020 WL 7066335, at *9 (W.D. Pa. Dec. 3, 2020) ("The Supreme Court in *Giglio* extended its ruling in *Brady* to encompass impeachment evidence relating to the credibility of a government witness. *Giglio*, 405 U.S. at 154. Any inducements or rewards given to government witnesses, including but not limited to money, grants of immunity, plea bargains, promises of leniency or recommendations thereof, or preferential treatment, would fall under impeachment evidence that must be disclosed under *Brady*." (citing *United States v. Higgs*, 713 F.2d 39, 43 (3d Cir. 1983))). "Rule 16 was not designed to provide a defendant with a vehicle to discover the government's case in detail or the strategy it intends to pursue at trial." *United States v. Beech*, 307 F.R.D. 437, 440 (W.D. Pa. 2015) (citing *United States v. Fioravanti,* 412 F.2d 407, 410 (3d Cir.), *cert. denied,* 396 U.S. 837, 90 S.Ct. 97, 24 L.Ed.2d 88 (1969)). "Nor is the rule designed to provide a defendant with verification that the use of anticipated evidence at trial by the defense is not vulnerable to attack by evidence within the government's possession." *Id.*

Defendant's Motion at ECF No. 536 requests an order compelling the Government to provide additional relevant information about the two confidential informants ("CIs") involved in this case. Defendant seeks disclosure of any benefits to the CIs; materials memorializing one of the CI's agreements to participate in consensual wiretaps; and specific details, including the

"captions, court terms and case numbers, search warrants, CI identification numbers, and affidavits of probable cause" for any other cases in which the confidential informants assisted law enforcement. As the basis for these requests, Defendant primarily seeks the information to impeach the CIs at trial; to challenge the sufficiency of the search warrants; and to assess the voluntariness of the CIs' consent to the recording of conversations.

The Government asserts that, to the extent that any such information exists and has not already been produced, Defendant's requests for disclosure are premature. It further argues that the CIs' identities are privileged, and that the information sought is not relevant or discoverable for purposes of challenging the sufficiency of the search warrants or to assess the voluntariness of the CIs' consent to the recording of conversations.

As noted during the hearing, because the Government has stated that it is aware of and intends to adhere to its ongoing obligations at the appropriate times under Rule 16 of the Federal Rules of Criminal Procedure, *Brady/Giglio*, and Jencks, the Court anticipates, going forward, that, to the extent that the Government is in possession of any further discoverable material under Rule 16 or exculpatory materials subject to disclosure under *Brady*, the same will be provided to the Defendant forthwith. With respect to impeachment material under *Brady/Giglio*, the Court's standard practice is to require disclosure **ten days** before trial, and that will apply in this case.

With respect to Jencks disclosures, as the parties are aware, "[t]here is no authority by which this court can order the government to provide Jencks Act statements prior to the time the witness has testified on direct examination at trial." *United States v. Lightfoot*, No. 08-cr-127, 2008 WL 3050300, at *3 (W.D. Pa. Aug. 5, 2008). That said, the Court encourages the Government to make those disclosures as early as possible, so as to avoid unnecessary delays during trial. The Court notes that the Government has stated that it does not intend to wait until

after direct testimony to disclose any Jencks material, but rather, will disclose such material sufficiently in advance of trial so as to avoid delay.

Otherwise, the Motion at ECF No. 536 overlaps with the Motion filed at ECF No. 539, which seeks the identity of the CIs in this case.  Defendant seeks the CIs' identities, including their full names, current addresses, dates of birth, and the substance of information they provided regarding Defendant.  Defendant asserts that, under the circumstances in this case, where the CIs allege that they arranged and participated in drug transactions with Defendant, and where Defendant denies participating in such transactions and the CIs are the sole eyewitnesses to the details of those narcotics transactions, other than the accused in the transactions charged, the CIs are the only witnesses in a position to either amplify or contradict the testimony of any law enforcement government witnesses at trial.  *See* ECF No. 539 at 5 ("Therefore, the information possessed by the confidential informant(s) and their trial testimony could cast doubt upon Mr. Overton's alleged participation in narcotic transactions.").  Defendant argues that, accordingly, the CIs' testimony is highly material to the fair determination of Defendant's guilt or innocence. Defendant asserts in the alternative that he is entitled to receive the identities of the CIs so that he may cross-examine the accuracy of those informants' testimony at the trial.

The Government argues that the CIs are not confidential informants in the traditional sense because one or more of them may testify at trial in this matter.  The Government argues that it has no obligation to reveal its witnesses ahead of time, and, even if these individuals are confidential informants in the traditional sense, their identities are protected by the informer's privilege and the Defendant has not met his burden to overcome that privilege.

"What is usually referred to as the informer's privilege is in reality the Government's privilege to withhold from disclosure the identity of persons who furnish information of violations

of law to officers charged with enforcement of that law." *Roviaro v. United States*, 353 U.S. 53, 59 (1957). "The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement[,]" and "[t]he privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation." *Roviaro*, 353 U.S. at 59. However, "[w]here the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." *Id.* at 60-61.

"[T]he first step in determining whether the identity of an informant must be disclosed is to ascertain what need, if any, the defendant has alleged for disclosure[,]" and "[t]he burden is on the defendant to show the need for disclosure." *United States v. Jiles*, 658 F.2d 194, 197 (3d Cir. 1981). "The second part of the '*Roviaro* test' requires a balancing of the [defendant's] interest in disclosure against the Government's interest in maintaining the confidentiality of its informant." *Jiles*, 658 F.2d at 198 (citations omitted) (footnote omitted). "If the result of this balance is that disclosure of the informer's identity will be essential to a fair determination of a cause, the Government's privilege must give way." *Id.* "Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." *Roviaro*, 353 U.S. at 62.

Initially, the Court agrees that the information Defendant seeks respecting the CIs is not relevant for purposes of evaluating the probable cause affidavits at issue in Defendant's suppression motions. *See United States v. Rivera*, 524 F. App'x 821, 826 (3d Cir. 2013) ("'It is well-established that a substantial showing of the *informant's* untruthfulness is not sufficient to

warrant a *Franks* hearing.'"  *United States v. Brown*, 3 F.3d 673, 677 (3d Cir.1993).  '[A]

substantial preliminary showing of intentional or reckless falsity on the part of the affiant must be

made in order for the defendant to have a right to an evidentiary hearing on the affiant's veracity.'

*Id*.  To make the preliminary showing required for a *Franks* hearing, the defendant must show

intentional or reckless falsity *on the part of the affiant*, *id.*, and 'cannot rest on mere conclusory

allegations . . . but rather must present an offer of proof contradicting the affidavit, including

materials such as sworn affidavits or otherwise reliable statements of witnesses,' *United States v.*

*Yusuf*, 461 F.3d 374, 383 n. 8 (3d Cir.2006).").  Further, the Court finds that Defendant's asserted

desire to evaluate the voluntariness of the CIs' consent to one-party recordings fails to rise above

mere speculation.  *See United States v. Acavino*, 467 F. Supp. 284, 287 (E.D. Pa. 1979) *("*Six other

Courts of Appeals have also ruled that a person's consent to recording and transcription of his

conversations is not rendered involuntary because his cooperation has been obtained in return for

a promise of lenient treatment.").

     That said, this case seemingly involves a very similar issue to that presented in *Roviaro*,

that is, the Government's right to withhold the identity of an informer who helped to set up the

commission of the crime and who was present at its occurrence.  The United States District Court

for the Eastern District of Pennsylvania has explained:

> Based on the nature and extent of the informant's involvement in the criminal
> occurrence, the United States Court of Appeals for the Third Circuit has suggested
> that "one of three types of cases may emerge" under *Roviaro. United States v. Jiles*,
> 658 F.2d 194, 196 (3d Cir.1981).  "First, the court may be presented with an
> extreme situation, such as that in *Roviaro* itself, in which the informant played an
> active and crucial role in the events underlying the defendant's potential criminal
> liability." *Id.* at 196-97.  In such cases, disclosure of the confidential informant's
> identity "will in all likelihood be required to ensure a fair trial." *Id.* at 197.  "At the
> other end of the spectrum, are the cases in which the informant was not an active
> participant or an eyewitness, but merely a tipster." *Id.*  In such cases, courts have
> generally held that the identity of the confidential informant need not be disclosed.
> *Id.* at 197.  Finally, "[a] third group of cases falls between these two extremes and

it is in this group that the balancing becomes most difficult." *See id.* (informant was eyewitness to, but did not actually participate in, criminal activity). As "the Court in *Roviaro* left substantial leeway to the trial courts to determine on a case-by-case basis whether disclosure is warranted," the resolution of a motion to compel disclosure is committed to the sound discretion of the trial court. *United States v. Brown*, 3 F.3d 673, 679 (3d Cir. 1993).

*United States v. Harrison*, No. CRIM. 04-CR-768, 2005 WL 840377, at *3 (E.D. Pa. Apr. 12, 2005). "[C]ourts generally have not required a criminal defendant to make an affirmative showing of materiality where the confidential informant was the only other participant in the crime charged" because, "[i]n such cases, 'participation, per se, qualifies the informant as a material witness.'" *Harrison*, 2005 WL 840377 at *3 (quoting *McLawhorn v. North Carolina*, 484 F.2d 1, 7 (4th Cir.1973); *see also United States v. U.S. Gypsum Co.*, 550 F.2d 115, 120 (3d Cir. 1977), *aff'd*, 438 U.S. 422, 98 S. Ct. 2864, 57 L. Ed. 2d 854 (1978) ("An informant in a drug case is a potential witness who may be presumed to possess unique knowledge about the transaction."); *United States v. Steele*, 83 F. Supp. 2d 340, 343 (N.D.N.Y. 2000) ("In this case, the informants were witnesses to and direct participants in all of the significant events surrounding the crimes charged. As such, they are 'obviously . . . crucial witness[es] to the alleged narcotics transactions.' *United States v. Roberts*, 388 F.2d 646, 649 (2d Cir.1968). Therefore, the identities of these informants should be revealed to the defendant."). "But '[w]here an informant's role was [limited to] validating a search, disclosure of his identity is not required.'" *United States v. Rivera*, 524 F. App'x 821, 827 (3d Cir. 2013) (quoting *United States v. Bazzano*, 712 F.2d 826, 839 (3d Cir.1983) (en banc)).

*Roviaro*, however, does not provide a fixed rule for when disclosure is justifiable, and courts have distinguished situations where there are multiple participants in an offense and situations where the informant is the *sole* other participant in the offense with the defendant:

Before the Court applies the *Roviaro* balancing test, Mr. Brown must first demonstrate a specific need for disclosure. Mr. Brown has not met this burden. He relies heavily on his assertion that the confidential informant was involved in the

charged criminal activity and was an eyewitness to the criminal activity.  He
describes the informant's potential testimony as being highly relevant, explaining
that an informant who participated in the crime is also likely an eyewitness that can
testify as to the events of the crime.  This description is generic insofar as it would
apply to any informant, or co-conspirator, who was active in the crime.  Mr.
Brown's request for disclosure of the informant's identity is no different than a
premature defense request for a list of government witnesses.  The confidential
informant is also not the only active actor involved in the alleged conspiracy.  There
are two known charged co-conspirators as well as other unindicted named and
unnamed co-conspirators.  The Court concludes that Mr. Brown has not met his
burden to establish a "specific need" beyond "mere speculation that an eyewitness
may have some evidence helpful to defendant's case."  Here, Mr. Brown argues
that with the informant's identity disclosed, Mr. Brown will have access to the
informant's generic testimony as to the charged crime.  Mr. Brown does not,
however, demonstrate that he has a need for such generic information at this stage
of the proceedings.  Accordingly, because Mr. Brown does not meet his burden to
demonstrate a need for disclosure, the Motion will be denied, without prejudice.

Even had Mr. Brown met his burden to establish a need for disclosure, such need
does not justify breaking the government's "privilege to withhold from disclosure
the identity of persons who furnish information of violations of law to officers
charged with enforcement of that law."  Mr. Brown relies on the Third Circuit's
description of the first of "three types of cases" that may emerge when applying the
*Roviaro* balancing test: In *Jiles*, the Court described this type of case as one where
"the court may be presented with an extreme situation, such as that in *Roviaro* itself,
in which the informant played an active and crucial role in the events underlying
the defendant's potential criminal liability.  In these cases, disclosure and
production of the informant will in all likelihood be required to ensure a fair trial.
*Jiles*, 658 F.2d at 196–97.  Despite the *Jiles'* Court's pronouncement of an "in all
likelihood rule," the Supreme Court in *Roviaro* clearly stated "that no fixed rule
with respect to disclosure is justifiable."  In *Roviaro*, the informer was the sole
participant, other than the defendant, in the charged crime.  Here, there are several
alleged participants, some named, others unnamed, who participated in the alleged
crime.  Under these circumstances this case is distinguishable from *Roviaro* in that
the informer is not a "sole" participant in the charged crime with the defendant.
The Court finds that disclosure of the confidential informant's identity is not
warranted when balanced against the public's interest in protecting the flow of
information against Mr. Brown's right to prepare his defense. Accordingly, Mr.
Brown's Motion to Reveal Identity of Confidential Informant is DENIED, without
prejudice.

*United States v. Brown*, No. CR 21-13-1, 2023 WL 1067540, at *7 (W.D. Pa. Jan. 27, 2023).

Turning to the instant case, the Court notes that a defendant is not entitled to obtain the

Government's witness list through discovery.  *United States v. DiPasquale*, 740 F.2d 1282, 1294

(3d Cir. 1984); *see also United States v. Johnson*, 218 F. Supp. 3d 454, 458 (W.D. Pa. 2016).  That said, courts have held that a district court is within its authority to require disclosure of witnesses and exhibits in advance of trial.  *See United States v. Fletcher*, 74 F.3d 49, 54 (4th Cir. 1996) ("The district judge in the present case routinely requires an exchange of witness lists prior to criminal trial in the interests of justice and fairness.  While such exchanges are not mandatory, no federal court appears to have found the practice unconstitutional.").  The Government has also stated that it intends to provide its witness list ahead of trial in this matter.  *See* ECF No. 840 at 9.  At this juncture, the Government intends to call at least CI #1 at trial, and would thus include the identity of that individual in its witness list if this case were to go to trial.  *See* ECF No. 961 at 28:2-9 ("There's no basis to overcome the informer privilege now, whereas at the pretrial conference, if we have not otherwise identified CI-1 then, then the argument might be much stronger that we need to provide them with CI-1's identifying information if we are not going to call CI-1 so the defense can do it.  But as I said, we intend to call CI-1 to testify.  If the trial was tomorrow, that's what our intention would be.").

Given the Government's statements respecting its own intention to call CI #1 if trial started tomorrow, the Court is inclined to hold that the disclosure of CI #1's identity is relevant and helpful to the defense of an accused or is otherwise essential to a fair determination of a cause, and that safety concerns are generalized in this case as opposed to specific.  Further, given CI #2's involvement in a controlled purchase on November 20, 2019, *see* ECF No. 961 at 38:6-12, and given that Defendant is charged at Count 8 for drug distribution on that date, it would also seem that CI #2's identity should also be revealed ahead of trial unless the Government is prepared to dismiss Count 8.  Following the issuance of this Opinion, the Court intends to schedule a status conference to discuss the scheduling of pretrial deadlines and trial in this matter.  The Court's

typical practice would be to require the Government to disclose its witness list between fourteen and twenty-eight days prior to trial.  Given that this disclosure might involve the identification of confidential informants, the Court would be inclined to provide for disclosure twenty-eight days ahead of trial to allow for effective trial preparation, but would of course elicit the parties' positions during the scheduling conference.

The Court intends to revisit this issue briefly during the scheduling conference, but, more importantly, immediately following the Government's disclosure of its witness list ahead of trial. If, at that time, the Government has not identified one or both confidential informants, the Court will be prepared to address a motion addressing that non-disclosure in short order.  The Court believes that it has provided sufficient guidance in this Opinion such that further Court-involvement on the issue could prove unnecessary.  That said, the Court will entertain further argument, briefing, or motion practice, including for reconsideration of the analysis herein, to the extent either party believes the same is warranted.  That said, the Motion at ECF No. 539 is denied without prejudice at this time as premature, and may be revisited following the Government's disclosure of its witness list.  The Motion at ECF No. 536 is granted in part (to the extent that the Court has set deadlines for impeachment materials), and is otherwise denied.

### B. ECF No. 530 Starks Motion to Preclude the Introduction of Recorded Conversations / ECF No. 538 Motion in Limine to Preclude Law Enforcement Witnesses from Identifying Defendant by Voice at Trial

Defendant's Motions at ECF Nos. 530 and 538 can, in this Court's estimation, properly be characterized as motions in limine to preclude the introduction of certain evidence at trial, specifically the identification of Defendant by voice at trial and recorded conversations to which the Government alleges that Defendant was a party.  The Motion filed at ECF No. 530 seeks to preclude the introduction of recorded conversations based upon *United States v. Starks*, 515 F.2d

112 (3rd Cir. 1975).  Defendant asserts that he did not engage in drug-related verbal conversations or text messages with undercover officers or informants, and that the Government cannot prove by a preponderance of the evidence that the Defendant is a speaker in any recordings.  Defendant also argues that the recordings themselves are unreliable for several reasons.

The Motion at ECF No. 538 seeks to preclude law enforcement witnesses from identifying Defendant by voice at trial in this matter.  This Motion lodges a hearsay objection on the basis that the officers' identification of Defendant's voice relies solely on information provided by confidential informants.  Defendant asserts that he did not speak to any law enforcement officers, and that officers should thus be precluded from identifying him by voice because such identification would rely solely on out of court hearsay statements made by the confidential informants to their handlers.  Defendant asserts that only the CIs should be permitted to identify Defendant by voice at trial.

The Government argues that Defendant's assertions are self-serving and speculative because Defendant is not entitled to the Government's witness list or the specifics of its witnesses' proposed testimony through discovery.  It also argues that it has obtained and produced Defendant's own recorded jail calls, which capture his voice for comparison to the recorded drug transactions in this case by law enforcement officers, as well as by the jury at trial.  The Government further argues that an undercover officer both texted and spoke to Defendant via FaceTime in April of 2020, thus contradicting his assertions that the only basis for voice identification is based on information from informants.  It argues that any assertion respecting the recordings' authenticity is conclusory and baseless.

With respect to motions in limine, the United States District Court for the Eastern District of Pennsylvania has explained:

The purpose of a motion in limine is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence. *See Bradley v. Pittsburgh Bd. Of Educ.*, 913 F.2d 1064, 1069 (3d Cir. 1990). The trial court should exclude evidence on a motion in limine only when the evidence is clearly inadmissible on all potential grounds. *Leonard v. Stemtech Health Sciences, Inc.*, 981 F.Supp.2d 273, 276 (D. Del. 2013).

A trial court considering a motion in limine may reserve judgment until trial in order to place the motion in the appropriate factual context. *See Diehl v. Blaw–Knox*, No. 01-0770, 2002 WL 34371510, at *1 (M.D. Pa. July 15, 2002). Further, a trial court's ruling on a motion in limine is "subject to change when the case unfolds, particularly if actual testimony differs from what was contained in the movant's proffer." *Luce v. United States*, 469 U.S. 38, 41, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984).

*United States v. Tartaglione*, 228 F. Supp. 3d 402, 406 (E.D. Pa. 2017).

Initially, the Court agrees with the Government that it is far from clear, on this record and at this juncture, that the recorded phone calls and an identification of Defendant by voice by law enforcement are clearly inadmissible on all potential grounds. The Government's assertion that an undercover officer spoke to Defendant via FaceTime is alone sufficient to deny his Motions at ECF Nos. 530 and 538 at this juncture. Lay opinion testimony can be offered as to voice identification. *See United States v. Hall*, No. 1:16-CR-050-01, 2019 WL 5892776, at *4 (M.D. Pa. Nov. 12, 2019), *aff'd*, 28 F.4th 445 (3d Cir. 2022) ("The court agrees with the Government that Federal Rule of Evidence 901 permits authentication of a voice through opinion evidence: 'An opinion identifying a person's voice--whether heard firsthand or through mechanical or electronic transmission or recording--[can be authenticated] based on hearing the voice at any time under circumstances that connect it with the alleged speaker.'" (quoting Fed. R. Evid. 901(a), (b)(5)). Where an opinion is offered based on "hearing the voice at any time under circumstances that connect [the voice] with the alleged speaker, thereby satisfying Rule 901(b)(5)'s requirements for voice identification, all remaining questions about the weight and credibility of a [the witness's identification] testimony [are] properly placed before the jury." *United States v. Hall*, 28 F.4th

445, 456 (3d Cir. 2022).  Further, and as will be discussed below, the Government may call a CI who purportedly had numerous conversations with Defendant both in-person and over the phone. The same will be made clearer once the Government has produced its list of witnesses.

The Government also intends to introduce recorded post-arrest prison calls to allow the jury to compare Defendant's voice in the prison calls with the voice in the recorded phone calls at issue in his Motion.  This is permissible under the Federal Rules of Evidence, and does not place the jury in the role of experts.  *See Hall*, 28 F. 4th at 457-58 (rejecting defendant's argument "that the admission of a recording of [defendant's] post-arrest interview, which the government introduced so that the jury could compare [defendant's] voice in the interview with the voice in the recorded phone calls, contravened the Federal Rules of Evidence[,]" and holding: "We do not agree that admitting the interview recording violated Rule 901's identification requirements because the government sufficiently identified [defendant's] voice on the calls during pretrial proceedings using [lay opinion] testimony.  Thus, we see no issue with playing the interview recording in conjunction with the recorded calls 'so that the jury could make its own aural comparisons. . . . In so concluding, we note that it would have been permissible under the Rules of Evidence for the government to have sought to identify Hall's voice in the recorded calls using Hall's voice in the recorded interview.  FED. R. EVID. 901(b)(5) (providing that voices may be identified 'based on hearing the voice at *any* time under circumstances that connect it with the alleged speaker.").

The Court further agrees with the Government that Defendant's assertions respecting with the recordings' chain of custody, the devices' recording capabilities, and issues with the preliminary transcriptions of the conversations are speculative and conclusory.  The Government's "burden of proof for authentication is slight[,]" and "all that is required is a foundation from which

14

the fact-finder could legitimately infer that the evidence is what the proponent claims it to be." *United States v. Mebrtatu*, 543 F. App'x 137, 140 (3d Cir. 2013).  At this juncture, Defendant has not provided the Court with a sufficient basis to conclude that there is any true basis to question the authenticity of the recordings.  Further, "evidence need not be authenticated before the trial has begun."  *United States v. Patton*, No. 2:19-CR-8, 2022 WL 446394, at *1 (W.D. Pa. Feb. 14, 2022).  The Court intends to allow the Government to lay a foundation for the evidence at issue at trial, and Defendant may raise an objection at that time should he believe he has an appropriate basis to do so.

In light of the procedural posture of this case, the Court finds the Motions at ECF No. 530 and 538 to be premature, and will deny them without prejudice as such.  Following the Government's production of its witness and exhibit list, the Court will entertain any renewed motion in limine respecting identification of Defendant at the appropriate juncture.  If raised, the Court will address the reliability of the identifications at that time.

### C. ECF No. 533 Motion to Suppress Confidential Informant's Identification of Defendant on or about July 17, 2019 and all Confidential Informant Identification Testimony / ECF No. 806 Supplemental Motion to Suppress Identifications of Defendant by All Confidential Informants, Confidential Sources, and Law Enforcement Officers

Defendant's Motions at ECF No. 533 and 806 seek the suppression of any photographic or voice identification of the Defendant by confidential informants, confidential sources, and law enforcement officers.  The Motion at ECF No. 533 asserts that, on or about July 17, 2019, law enforcement officers presented a single photograph depicting Defendant to one of the Government's CIs, and that the Government alleges that this CI identified Defendant as a seller of controlled substances.  Defendant asserts that the aforementioned alleged identification that occurred on or about July 17, 2019 was impermissibly suggestive in violation of Defendant's rights

under the 5th Amendment and that that identification should therefore be suppressed.  Defendant asserts that any in-court identification by this CI is rendered unreliable by the July 17, 2019 suggestive identification and a subsequent November 20, 2019 misidentification.   The supplemental motion at ECF No. 806 adds further legal argument, and asserts that the taint from the previous identification is so overwhelming that no reliable identifications should be made at the trial of the case.  The supplemental motion at ECF No. 806 further argues that there is no indication that the CI who was shown the photograph had provided a physical description of Defendant prior to being shown the photograph, and further requests a voice line-up prior to trial.

The Government argues that the identification at issue is not so impermissibly suggestive as to give rise to a substantial likelihood of irreparable misidentification, and that, even if it were, Defendant cannot establish that the identification was unreliable.  It asserts that its investigation into the alleged drug-trafficking organization at issue spanned several years and involved numerous controlled purchases by each informant and by the undercover officer, and that the same provided ample opportunity in various settings to observe, speak with, and interact with Defendant, thus making the identifications of Defendant by voice and by photograph reliable.   The Government argues that CI #1's July 17, 2019 identification of Defendant, which occurred approximately 18 months after a prior series of controlled purchases (and immediately before another controlled purchase), was neither impermissibly suggestive, nor constitutionally unreliable, given repeated interactions between the two.   It asserts that any assertion of misidentification goes to the weight and credibility of testimony, and should be placed before the jury.

The Court agrees with the Government. Initially, Defendant's argument respecting a purported misidentification[3] of Defendant by CI #2 is essentially entirely negated by the fact that CI #2 did not deal directly with the Defendant and did not contribute to the July 17, 2019 identification of Defendant. *See* ECF No. 961 at 38:16-24; *see also id.* at 44:-9-20 ("The question is being asked of me – it's a worthwhile question. If either of you can speak to it, feel free. If you can't, that's fine. The voice identification and the photo identifications that have been identified are all by CI-1; is that correct? MR. HALLER: That's correct. That's the July 17, 2019 front porch at 306 Virginia day. It was CI-2 four months later that we are not referencing or showing a photograph. That's the incident where CI-2 introduced the undercover to the organization but not to Mr. Overton. It was to a runner for Mr. Overton. It was that time when CI-2 referenced, in reference to the runner, having changed his appearance."). Defendant essentially acknowledges that his argument is negated by these facts. *Id.* at 40:14-41:4 ("In terms of being able to identify from the voice from that transaction, again I go back to the only person who knew that was whichever CI was there, CI-2 as was just told to us. *It doesn't change the fact that -- and if CI-2 is not going to make an identification in this case, that's fine*, but we still have as cleared up, if that's the one who looked at a single photograph and that's the one who later did these transactions. I don't know who she was referring to. I know she allegedly had conversations or text messages with Mr. Overton before that, so, you know, I can't really argue something – I can't get into particularities at this point *other than to say there's still an issue if they are going to use that particular CI as an identification witness in the case. If they are not, I have no basis to argue about that. I get that*." (emphasis added)).

---

[3] And the Court notes that the record is far from clear that this was, in fact, a misidentification.

Given the Government's representations at the hearing, it seems unlikely that CI-2 will be offered as a witness who will physically identify Defendant, and, in any event, she did not make the July 17, 2019 photograph identification of Defendant.  As such, Defendant's argument that CI #2 mistook a Co-Defendant for Mr. Overton in November of 2019 is irrelevant to CI #1's July 17 2019 identification of Defendant.  That said, the Court will deny these Motions without prejudice to Defendant renewing the Motions following the Government's production of its witness list, should he believe the same is warranted.

With respect to due process in the context of an identification of a defendant, the Third Circuit has provided:

> Following a line of eyewitness identification cases, the Supreme Court in *Biggers* clarified that the admission of identification evidence offends due process only if the evidence meets two criteria.  First, the evidence must be "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification."  Second, if the evidence is impermissibly suggestive, it must also be unreliable.  The two criteria work in tandem, even though the admissibility of identification evidence often hinges on reliability. . . .  Put differently, due process requires the suppression of an identification only if it was obtained pursuant to a suggestive process that in turn raises serious questions about the reliability of the resulting identification.

> *Biggers* set forth a multi-factor test for the reliability of eyewitness testimony that we subsequently extended to voice identification testimony in *Sanes* as a "source of guidance."  The factors are: (1) the opportunity for the witness to view the perpetrator at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the perpetrator; (4) the witness's level of certainty at the time of the identification; and (5) the length of time between the crime and the confrontation.

*Hall*, 28 F. 4th at 454-55 (citations and emphasis omitted).

A single photograph identification is not necessarily impermissibly suggestive.  *See United States v. Bissonette*, 164 F.3d 1143, 1146 (8th Cir. 1999) ("The totality of circumstances here indicates that the single photo identification was not impermissibly suggestive or likely to result in 'irreparable misidentification.'").  Even if it was, the Defendant faces an uphill battle in

establishing that the photographic and/or any voice identification by CI #1, a non-victim, was unreliable.  *See Hall*, 28 F.4th at 455 ("By contrast, non-victim voice identification witnesses in some circumstances are 'in a position to offer uniquely reliable testimony.'" (quoting *Brown v. Harris*, 666 F.2d 782, 786 (2d Cir. 1981)); *see also id.* ("Non-victim witnesses . . . may be among those who have familiarized themselves with the defendant's voice under circumstances controlling for factors—such as stress—that could impair the accuracy of a voice identification. For example, the witness may have heard the defendant's voice over the course of multiple or extended conversations."). Here, the Government argues as follows:

> Thus, [CI #1's] July 17, 2019 identification of Overton, *which occurred approximately 18 months after a prior series of controlled purchases (and immediately before another controlled purchase with Overton*, as charged in Count Seven of the Superseding Indictment), was neither impermissibly suggestive, nor constitutionally unreliable, given [CI #1's] repeated interactions with him.

ECF No. 840 at 22 (emphasis added).  In any event, the Court agrees with the Government that this matter should be addressed closer to trial, and at a time where the quantum of evidence the Government intends to rely upon has been made clearer through the production of witness and exhibit lists.

Following the exchange of witness and exhibit lists, and should the Government reveal that it intends to call CI # 1, the Court will certainly entertain a renewed motion in limine to preclude the introduction of photographic or voice identification evidence.  The Court will schedule an evidentiary hearing ahead of trial, if warranted.  *See United States v. Morris*, No. CR. 1:05-CR-484, 2006 WL 2583651, at *4 (M.D. Pa. Sept. 7, 2006) ("A defendant may request a hearing outside the presence of the jury to determine the reliability of an in-court identification. 'The scheduling of such a hearing rests in the discretion of the trial court, and may at the court's convenience be set for any time before the in-court identification itself.'" (citations omitted)); *see*

*also id.* at *5 ("The Court notes the potential prejudice to Defendant if the identification testimony is deemed unreliable after the witness presents an in-court identification in the presence of the jury. Therefore, the Court will conduct a suppression hearing immediately before trial to determine whether an in-court identification is reliable.").  That said, the record before the Court, if accurate, seemingly supports a finding that CI #1 and the undercover officer should be permitted to present identification evidence at trial.  *See Hall*, 28 F.4th at 456 ("Where an opinion is offered based on 'hearing the voice at any time under circumstances that connect [the voice] with the alleged speaker, thereby satisfying Rule 901(b)(5)'s requirements for voice identification, *all remaining questions about the weight and credibility of a [the witness's identification] testimony [are] properly placed before the jury*." (emphasis added)).

### D.  ECF No. 540 Motion to Suppress Physical Evidence Seized from 306 Virginia Ave / ECF No. 541 Motion to Suppress Physical Evidence Seized from 236 Taylor Street

Defendant's Motions at ECF Nos. 540 and 541 seek to suppress all physical evidence seized from 306 Virginia Ave and 236 Taylor Street in Butler, Pennsylvania, the alleged residences of Defendant, as a result of search warrants executed on June 24, 2020.  The same affidavit of probable cause was submitted in support of each of the search warrants for these locations.  The arguments in the Motions filed at ECF No. 540 and 541 are materially and substantively identical.

Defendant asserts that the affidavit of probable cause submitted in support of the searches of these locations does not establish probable cause to search the locations because, under the totality of the circumstances, there was not a fair probability that evidence of a crime would be found at either 306 Virginia Ave or 236 Taylor Street.  Defendant asserts that there are no allegations contained within the affidavit of probable cause which indicate that law enforcement and/or their CIs observed controlled substances and/or drug proceeds at the locations.  Defendant

argues that the affidavit was so lacking in indicia of probable cause as to render any official belief in its existence entirely unreasonable.  Defendant further argues that the affidavit relied upon by the magistrate judge contained materially false statements that were made intentionally and/or recklessly by the affiant and, likewise, that there were material omissions recklessly and/or intentionally excluded from the affidavit of probable cause by the affiant.  The purported misstatement is that law enforcement could identify Defendant by his voice.  The affidavit also purportedly failed to disclose that CI #1 had previously misidentified a co-defendant as Mr. Overton.[4]  Defendant challenges the reliability and trustworthiness of the CI.  Defendant further argues that the information and events relied upon in the affidavit occurred months prior to the submission of the affidavit of probable cause, and that the search warrants were thus based upon stale information.  Defendant has requested a *Franks* Hearing on these Motions.

The Government argues that each of Defendant's Motions to Suppress fails as a matter of law, and that Defendant has not established the necessity of a *Franks* hearing on any of his motions. It asserts that the contents of all of the challenged warrants establish that the authorizing magistrate judge had a substantial basis to find probable cause in each warrant, and further asserts that Defendant has not sufficiently established that the warrants were based on intentionally or recklessly false misstatements or omissions that were material to probable cause.  It also asserts that the good faith exception would apply in any event.  The Government also previously argued that Defendant had not established that he has standing to challenge the Taylor Street warrant.  The Government ultimately withdrew that argument during oral argument, and Defendant's standing to challenge the Taylor Street warrant is thus no longer at issue.  *See* Tr. 49:17-20 ("At this point,

---

[4] As noted, this alleged misidentification, which, again, the Court sincerely doubts constituted a misidentification, was made by CI #2.

with the defense making that representation for Taylor Street, we no longer challenge their establishment of standing relative to that location.").

The Fourth Amendment protects individuals from "unreasonable searches and seizures" of their "persons, houses, papers, and effects." U.S. Const. amend. IV. Subject to certain exceptions, evidence obtained through unreasonable searches and seizures must be suppressed as "fruit of the poisonous tree." *United States v. Bey*, 911 F.3d 139, 144 (3d Cir. 2018); *see also Wong Sun v. United States*, 371 U.S. 471, 487–88 (1963). "Generally, for a search or seizure to be reasonable under the Fourth Amendment, it must be effectuated with a warrant based upon probable cause." *Bey*, 911 F.3d at 144–45. Here, Magistrate Judge Patricia L. Dodge issued search warrants for the Virginia Street and Taylor Street locations based upon an affidavit of probable cause submitted by FBI Special Agent Kellen McGee.

The reviewing court pays "great deference" to an issuing judge or magistrate's initial determination of probable cause. *Illinois v. Gates*, 462 U.S. 213, 236 (1983). The court's role is limited to ensuring that the magistrate had a "substantial basis" for concluding that the affidavit supporting the warrant established probable cause. *Gates*, 462 U.S. at 236; *see also United States v. Jones*, 994 F.2d 1051, 1057 (3d Cir. 1993) ("However, our role is not to make our own assessment as to whether probable cause existed. Rather, we are constrained to determine only whether the affidavit provides a sufficient basis for the decision the magistrate judge actually made."). The United States Court of Appeals for the Third Circuit has explained:

> Of course, such deference "does not mean that reviewing courts should simply rubber stamp a magistrate's conclusions." *United States v. Tehfe*, 722 F.2d 1114, 1117 (3d Cir.1983), *cert. denied*, 466 U.S. 904, 104 S.Ct. 1679, 80 L.Ed.2d 154 (1984). But it does mean that "the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." *United States v. Ventresca*, 380 U.S. 102, 109, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965).

*Jones*, 994 F.2d at 1055.  The reviewing court confines its "review to the facts that were before the magistrate judge, i.e., the affidavit, and [does] not consider information from other portions of the record."  *Id.*

In making a probable cause determination for purposes of deciding whether to issue a warrant, the "task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before [the magistrate], including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place."  *Gates*, 462 U.S. at 238.  "[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *United States v. Whitner,* 219 F.3d 289, 296 (3d Cir. 2000) (quoting *Gates*, 462 U.S. at 232).  The reviewing court's inquiry can be guided by certain considerations:

> The supporting affidavit must be read in its entirety and in a commonsense and nontechnical manner.  Statements in an affidavit may not be read in isolation—the affidavit must be read as a whole.  Furthermore, the issuing judge or magistrate may give considerable weight to the conclusions of experienced law enforcement officers regarding where evidence of crime is likely to be found and is entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense.

*United States v. Dietz*, 452 F. Supp. 2d 611, 618 (E.D. Pa. 2006) (quoting *Whitner*, 219 F.3d at 296).

The Third Circuit has explained that "[a] magistrate may issue a warrant relying primarily or in part upon the statements of a confidential informant, so long as the totality of the circumstances gives rise to probable cause."  *United States v. Stearn*, 597 F.3d 540, 555 (3d Cir. 2010).  "In evaluating the worth of an informant's report," courts "employ a 'totality of the circumstances' approach, considering, among other factors, the informant's veracity, reliability,

and basis of knowledge." *United States v. Holmes*, 69 F. App'x 66, 68 (3d Cir. 2003) (citing *Gates*, 462 U.S. at 230). "*Gates* . . . instructs that 'a deficiency in one [element] may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability.'" *Stearn*, 597 F.3d at 555 (quoting *Gates*, 462 U.S. at 233). "In particular, *Gates* endorsed independent '[police] corroboration of details of an informant's tip' as an important method for establishing a tip's reliability." *Stearn*, 597 F.3d at 555 (quoting *Gates*, 462 U.S. at 241). With respect to confidential informants, the Sixth Circuit has explained that "[a]n informant's tip is considered to have greater reliability, and therefore to be more supportive of a finding of probable cause, if the affidavit avers that the name of the confidential informant has been disclosed to the issuing judge." *United States v. Pusey*, 189 F. App'x 475, 479 (6th Cir. 2006) (quoting *United States v. May*, 399 F.3d 817, 823 (6th Cir.2005)). The Sixth Circuit further explained that, "[o]n the other hand, the failure to identify a confidential informant to the magistrate does not invalidate probable cause because it is 'but one "relevant consideration[ ] in the totality-of-the-circumstances analysis that traditionally has guided probable-cause determinations . . . ."'" *Id.* The Sixth Circuit also explained that, "[i]n short, an affidavit is sufficient to support a finding of probable cause as long as the magistrate is 'informed of some of the underlying circumstances . . . from which the officer concluded that the informant, whose identity need not be disclosed, was credible, or his information reliable.'" *Id*.

"[D]irect evidence linking the place to be searched to the crime is not required for the issuance of a search warrant[,]" and "probable cause can be, and often is, inferred by considering the type of crime, the nature of the items sought, the suspect's opportunity for concealment and normal inferences about where the criminal might hide the fruits of his crime." *United States v. Harris*, 884 F. Supp. 2d 383, 393 (W.D. Pa. 2012) (quoting *United States v. Hodge*, 246 F.3d 301,

305 (3d Cir. 2001)).  "When the crime under investigation is drug distribution, a magistrate may find probable cause to search the target's residence even without direct evidence that contraband will be found there."  *Stearn*, 597 F.3d at 558.  The Third Circuit has "recognized that 'evidence associated with drug dealing needs to be stored somewhere, and . . . a dealer will have the opportunity to conceal it in his home.  After all, a dealer could logically conclude that his residence is the best, and probably the only, location to store items such as records[,] . . . cash, . . . guns, . . . and large quantities of drugs to be sold.'"  *Id.* at 558.  The Third Circuit has reaffirmed the "reasonable inference . . . that drug dealers often store evidence of drug crimes in their residences," but has held that "application of this inference is based on evidence supporting three preliminary premises: (1) that the person suspected of drug dealing is actually a drug dealer; (2) that the place to be searched is possessed by, or the domicile of, the dealer; and (3) that the home contains contraband linking it to the dealer's activities."  *Id.* at 559 (quoting *United States v. Burton*, 288 F.3d 91, 104 (3d Cir. 2002)).

With respect to the third *Burton* prong, i.e. the nexus between a defendant's drug trafficking activity and the defendant's home, the Third Circuit has explained:

> Our case law, from [*Jones*, 994 F.2d 1051] to [*Burton*, 288 F.3d 91], suggests many factors that help establish the required nexus between a defendant's drug-dealing activities and his home.  These include: large-scale operations, a defendant's attempts to evade officers' questions about his address, the conclusions of experienced officers "regarding where evidence of a crime is likely to be found," the proximity of the defendant's residence to the location of criminal activity, probable cause to arrest the defendant on drug-related charges, and the tip of a "concerned citizen" that a specific stolen item would be found in the defendant's residence. . . . [T]hese factors are not requirements. Nor are these factors exhaustive.

*Stearn*, 597 F.3d at 559–60 (footnotes and citations omitted).  Courts have also found that the fact that a drug dealer returned to his or her home directly after a drug deal supports an inference that the home contains contraband linking it to the dealer's trafficking activities.  *See Burton*, 288 F.3d

at 104 ("Of course, Burton's travel from Darien Street to North Garnet Street does not simply support the inference that Burton's home was on that street, but tellingly indicates that his home was the destination for the illegal proceeds of his drug transaction. While we generally accept the common sense proposition that drug dealers often keep evidence of their transactions at home, *see Whitner*, 219 F.3d at 297–98, that inference is much stronger when the home is the first place a drug dealer proceeds following such a transaction."); *see also United States v. Suarez-Arzon*, 664 F. App'x 180, 183 (3d Cir. 2016) ("Moreover, law enforcement observed instances of suspicious behavior, including Herrera conducting what appeared to be a drug transaction and immediately returning to 2232 Tyson Street.").

With respect to Defendant's *request* for a Franks hearing, the United States Supreme Court has explained:

> [W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.

*Franks v. Delaware*, 438 U.S. 154, 155–56 (1978). The Court finds that Defendant has not made a substantial, or any, preliminary showing that a false statement was knowingly and intentionally, or with reckless disregard for the truth, included by the affiant in the affidavit of probable cause. Again, a law enforcement officer purportedly spoke to Defendant via FaceTime prior to the issuance of the warrants, thus contradicting Defendant's assertion that the affidavit inaccurately stated that law enforcement could identify Defendant by voice, and the assertion respecting CI #2's purported misidentification is so tenuous that the Court cannot conclude that Defendant has

26

made a "substantial" preliminary showing.   Accordingly, the Court's review is limited to determining whether the issuing judge had a "substantial basis" for concluding that the affidavit supporting the warrants for the searches at issue established probable cause.  *Gates*, 462 U.S. at 236.

Initially, the affidavit at issue is lengthy and thorough, and it discusses Agent McGee's relevant experience and the involvement of Agent McGee and other experienced law enforcement professionals and confidential informants in a large-scale investigation involving the Defendant. *See United States v. Green*, No. 23-1022, 2024 WL 277706, at *3 (3d Cir. Jan. 25, 2024) ("Magistrate judges regularly defer to the assessments of experienced law enforcement officers like him on matters within their competence, and reviewing courts must defer to magistrates' credibility determinations.").   The Court concludes that the affidavit, when read as a whole, clearly contains sufficient information to support a finding of probable cause to search both the Virginia Ave and Taylor Street locations.   First, the affidavit clearly sets forth sufficient information to support a finding of probable cause that Defendant was a drug dealer.   The affidavit describes in detail the investigation conducted by law enforcement involving Defendant and his alleged associates, asserting that the investigation revealed that Defendant and his associates ran a large-scale drug trafficking organization whereby they sourced heroin, fentanyl, and crack cocaine from Philadelphia and brought those controlled substances to Butler, Pennsylvania.   It asserts that these substances were stored at various locations and distributed, sometimes by runners, in the Butler area.   The affidavit further provides that the investigation involved numerous controlled purchases of various quantities of controlled substances from Defendant and his associates, many of whom had criminal histories involving prior drug trafficking or firearms offenses.

The affidavit provides as follows with respect to the items that may be seized at the relevant locations:

> [C]ontrolled substances, electronic devices including cell phones, drug paraphernalia, financial records concerning the distribution of drugs, firearms/weapons, cash/currency, indicia of residency, and other evidence of drug trafficking, as more fully described in Attachment B, which is appended to this affidavit and incorporated herein by reference.  Based on your affiant's training and experience, the items listed in Attachment B are the types of evidence commonly found and seized from large-scale drug traffickers like the targets of this investigation.

ECF No. 541-3 at 3.  The affidavit describes at length the Agent's experience and knowledge linking certain activities and items to a drug dealer's home, including a large number of visitors who often remain in the premises for a short period of time.  *Id.* at 8.  The affidavit asserts that activity consistent with drug trafficking had been observed at both the Virginia Ave and Taylor Street locations.  *Id.* at 9.  Each of these addresses was identified as a location where Defendant's alleged co-conspirators frequented, and each was identified as a residence of Defendant.  *Id.*  The affidavit sets forth sufficient information to support a finding of probable cause that each of these locations constitutes a residence of Defendant.  Defendant had also been indicted by a grand jury at the time of the search.  *See United States v. Jones*, 994 F.2d 1051, 1055–56 (3d Cir. 1993) ("If there is probable cause to believe that someone committed a crime, then the likelihood that that person's residence contains evidence of the crime increases.").

The affidavit asserts that information received from CI #1 had been corroborated by law enforcement, and that such information was thus considered reliable.  ECF no. 541-3 at 10.  CI #2 has previously cooperated with law enforcement and had proven reliable in those scenarios, and the information provided in this case by CI #2 had also been corroborated by law enforcement.  *Id.* at 11.  The affidavit provides that each CI should be considered reliable based upon the same.  *Id.*

The affidavit details numerous controlled purchases that were conducted with the assistance of the CIs and an undercover officer.  ECF No. 541-3 at 11-29.  According to the affidavit, nearly all of these purchases involved contact with Defendant via phone call or text message, and "runners" were observed leaving from, and returning to, the Virginia Ave location. *Id.*; *see also id.* at 18 ("Based on my training and experience, the unknown individuals' movements at [the Virginia Ave and Taylor Street locations] were consistent with drug trafficking activity."). It also describes Defendant's criminal history, which includes convictions for firearms and drug trafficking offenses.

The affidavit at issue is sufficient to support a finding of probable cause that the Defendant is actually a drug dealer, that the places to be searched were possessed by, or the domiciles of, the Defendant, and that the homes contained contraband linking it to Defendant's drug trafficking activities.  The affidavit describes a large-scale drug trafficking operation and the conclusions of an experienced FBI agent regarding where evidence of a crime is likely to be found, as well as information respecting the proximity of Defendants' residences to the location of criminal activity and probable cause to arrest the defendant on drug-related charges.

The Court notes that proximity is a relevant factor in considering whether there exists probable cause of a nexus between a defendant's home and that defendant's drug dealing activity. *See Suarez-Arzon*, 664 F. App'x at 184 ("Finally, the nexus between Herrera's drug activity and the location to be searched is strengthened by their physical proximity.").  The issuing magistrate judge could also have taken judicial notice that the Virginia Ave and Taylor Street locations were less than a mile apart from each other and a mile or less from the other locations mentioned in the affidavit, including the Broad Street Residence, S. Monroe Residence, McClain Avenue Residence, and Mercer Street Residence. *See Stearn*, 597 F.3d at 564 ("The magistrate may have

additionally taken judicial notice that 4049 Higbee is a mere half-mile from the location of Joseph

Doebley's September 28 drug sale, made at the intersection of Higbee and Cottage Streets.").  The

reviewing court's role is limited to ensuring that a magistrate had a "substantial basis" for

concluding that the affidavit supporting the warrant established probable cause.  *Gates*, 462 U.S.

at 236.  "The supporting affidavit must be read in its entirety and in a commonsense and

nontechnical manner."  *Whitner*, 219 F.3d at 296.  The proximity of the locations at issue to drug

trafficking activity strengthens the nexus between the Virginia Ave and Taylor Street locations

and Defendant's alleged drug trafficking activity.

The affidavit further describes in substantial detail the role of the CIs, whose identities need

not be disclosed to the issuing judge, *see Pusey*, 189 F. App'x at 479, in the investigation involving

Defendant, including the CI's participation in controlled purchases.  The affidavit also describes

in detail the CIs' provision of corroborated information during the investigation at issue in this

matter, as well as CI #2's provision of reliable information in past investigations.  *See United

States v. Penney*, No. 2:19-CR-8, 2020 WL 6048810, at *10–11 (W.D. Pa. Oct. 13, 2020) ("There

was a substantial basis to credit the statements of the confidential informants here because all these

informants were known sources of reliable information to law enforcement. . . . The statements

were further corroborated by law enforcement observing one of the confidential informants

conducting controlled purchases of cocaine from [the defendant], including one such purchase

within forty-eight hours of filing the affidavit.").

In light of all of the above, and especially in light of the deferential standard of review

applicable in this matter, the Court finds that the issuing judge could certainly reasonably conclude

that there was a fair probability that drug-related evidence would be found at the Virginia Ave and

Taylor Street locations.  The Court finds that the facts, circumstances, and information set forth in

the affidavit, when considered in their totality, are clearly sufficient to support a finding that the affidavit provided the magistrate with a "substantial basis" for finding probable cause for the searches of these locations.  The Court will deny the Motions to Suppress to the extent that they seek relief with respect to the evidence seized at these locations.  Because the Court has found that the search warrants at issue were supported by probable cause, the Court need not address the Government's argument that the good faith exception applies.

### E.  ECF No. 542 Motion to Suppress Physical Evidence Seized from 117 N. Main Street

Defendant's Motion at ECF No. 542 seeks to suppress all physical evidence seized from 117 N. Main Street in Butler, Pennsylvania.  The Motion asserts that the affidavit of probable cause submitted by Pennsylvania State Trooper Michael J. Taylor on October 29, 2018 in support of the search warrant for this location lacked sufficient probable cause to support the execution of that search warrant, and that all evidence seized as a result of that warrant must be suppressed.  This Motion further seeks to suppress the firearm evidence seized as a result of a second warrant that was obtained on October 30, 2018, after officers observed a firearm in a toaster oven at the N. Main St. location and terminated their search until such time as a second warrant could be obtained.  Defendant asserts that this evidence was observed and obtained as a result of the first unlawful search, and that it should thus be suppressed as fruit of the poisonous tree.  The Government again argues that this Motion fails as a matter of law, and that a *Franks* hearing is not warranted.

The Government aptly summarizes the affidavit of probable cause submitted in support of the first search warrant, which is the only warrant Defendant challenges, as follows:

> That first warrant was authored by a Pennsylvania State Trooper with approximately 14 years' experience.  He recounted his extensive training in narcotics and firearms cases and over 100 drug-related arrests.

The affiant also described receiving information from Person 1, whose business was near Overton's Business, that Person 1 could smell marijuana coming from the Business on "numerous occasions."  In the afternoon of October 29, 2018, the affiant corroborated this information.  The affiant and another officer visited Person 1 and, upon entering Person 1's business, smelled the "odor of burnt marijuana." Person 1 led the officers to an "inside wall" bordering Overton's Business, where the officers "detected a strong smell of burnt marijuana coming from 117 N. Main St.," i.e., Overton's Business.  Minutes later, a third trooper observed Overton exiting the front door of his Business, before returning inside.  Next, the affidavit enumerated Overton's extensive criminal history, including a 2017 conviction for possessing a small amount of marijuana, as well as multiple prior charges and convictions for drug trafficking and for violent and firearms-related offenses.

Later that same day, the magistrate judge found probable cause and approved the warrant to search the Business any time during the day or night for "marijuana and any illegal controlled substances" and paraphernalia.  The search, executed shortly thereafter, indeed yielded marijuana blunts, drug paraphernalia[,] and packaging materials.  In plain view, law enforcement also observed white powder residue on a digital scale and a firearm, which prompted them to seek a second search warrant to seize any firearms or other controlled substances.

ECF No. 840 at 47-48.

To the extent Defendant requests a *Franks* hearing on this Motion, that request is denied. The Court finds that Defendant has not made a substantial, or any, preliminary showing that a false statement was knowingly and intentionally, or with reckless disregard for the truth, included by the affiant in the affidavit of probable cause for the N. Main St. location.  Further, the Court finds that Defendant's Motion to Suppress the evidence seized at this location is meritless, as the search warrant issued for Defendant's business at N. Main St. is supported by ample probable cause.

"It is well settled that the smell of marijuana alone, if articulable and particularized, may establish not merely reasonable suspicion, but probable cause."  *United States v. Ramos*, 443 F.3d 304, 308 (3d Cir. 2006).  The Supreme Court has endorsed "independent '[police] corroboration of details of an informant's tip" as an important method for establishing a tip's reliability.'"  *Stearn*, 597 F.3d at 555.  The affidavit at issue asserts that "Person 1," who maintained a business next to the searched location, reported to law enforcement that he had detected the odor of marijuana

coming from the N. Main St. location, and that he had detected that smell in the past on more than one occasion.  The affidavit provides that, before submitting the affidavit, two officers reported to the neighboring location to corroborate Person 1's report, and, upon arriving at the neighboring location, the officers smelled the odor of burnt marijuana emanating from a wall adjacent to Defendant's business.  The affidavit further provides that a third officer observed Defendant leave and reenter the N. Main St. location.  That officer also obtained Defendant's criminal history, which is detailed in the affidavit and which includes drug and firearms convictions.  Under these circumstances, the affiant, an experienced law enforcement officer, clearly provided "articulable and particularized" facts that support a finding of probable cause to search the N. Main St. location.  *See United States v. McMillion*, 472 F. App'x 138, 141 (3d Cir. 2012) (finding probable cause was established where officers smelled the odor of marijuana in an apartment complex hallway and followed the smell up to a specific apartment).  For these reasons, Defendant's Motion at ECF No. 542 will be denied.  Again, because the Court has found that the search warrant at issue was supported by probable cause, the Court need not address the Government's argument that the good faith exception applies.

## III.    Conclusion

For the reasons discussed above, the Court will grant in part and deny in part Defendant's Motions, as discussed above.  An appropriate Order of Court follows.

BY THE COURT:

*/s/Robert J. Colville*
Robert J. Colville
United States District Judge

DATED: May 3, 2024

cc: All counsel of record